UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

KIMBERLEA R. HAMPTON,

    Plaintiff,

v.                                                   Case No. 8:20-cv-1654-CPT

KILOLO KIJAKAZI,
Acting Commissioner of Social Security,[1]

    Defendant.
_____/

**O R D E R**

The Plaintiff seeks judicial review of the Commissioner's denial of her claim for Disability Insurance Benefits (DIB). For the reasons discussed below, the Commissioner's decision is affirmed.

I.

The Plaintiff was born in 1977, is a high school graduate, and has past relevant work experience as a cashier, leasing agent, call center operator, and assistant bank manager. (R. 39, 56–57). In March 2018, the Plaintiff applied for DIB, alleging disability as of June 2016 due to anxiety, seizures, and a broken back. (R. 60–61). The

---

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Federal Rule of Civil Procedure 25(d), Ms. Kijakazi is substituted for Commissioner Andrew M. Saul as the Defendant in this suit.

Social Security Administration denied the Plaintiff's application both initially and on reconsideration. (R. 70, 85).

At the Plaintiff's request, an Administrative Law Judge (ALJ) conducted a hearing on the matter in September 2019. (R. 35–59). The Plaintiff was represented by counsel at that hearing and testified on her own behalf. (R. 35, 39–56). A vocational expert (VE) also testified. (R. 56–58).

In a decision issued in October 2019, the ALJ determined that the Plaintiff (1) had not engaged in any substantial gainful activity from the period of her alleged onset date in June 2016 through her date last insured of June 30, 2017; (2) had the severe impairments of obesity, seizure disorder, and degenerative disc disease of the lumbar spine; (3) did not, however, have an impairment or combination of impairments that met or medically equaled any of the listings; (4) had the residual functional capacity (RFC) to perform a restricted range of light work; and (5) based on the VE's testimony, could not engage in her past relevant work but was capable of making a successful adjustment to other jobs that exist in significant numbers in the national economy. (R. 20–29). Based on these findings, the ALJ concluded that the Plaintiff was not disabled. (R. 29).

The Appeals Council denied the Plaintiff's request for review. (R. 1–4). Accordingly, the ALJ's decision became the final decision of the Commissioner.

II.

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental

impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see also* 20 C.F.R. §§ 404.1505(a).[2] A physical or mental impairment under the Act "results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

To determine whether a claimant is disabled, the Social Security Regulations (Regulations) prescribe "a five-step, sequential evaluation process." *Carter v. Comm'r of Soc. Sec.*, 726 F. App'x 737, 739 (11th Cir. 2018) (per curiam) (citing 20 C.F.R. § 404.1520(a)(4)).[3] Under this process, an ALJ must assess whether the claimant: (1) is performing substantial gainful activity; (2) has a severe impairment; (3) has a severe impairment that meets or equals an impairment specifically listed in 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) has the RFC to engage in her past relevant work; and (5) can perform other jobs in the national economy given her RFC, age, education, and work experience. *Id.* (citing *Phillips v. Barnhart*, 357 F.3d 1232, 1237 (11th Cir. 2004); 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4)). Although the claimant has the burden of proof through step four, the burden temporarily shifts to the Commissioner at step five. *Goode v. Comm'r of Soc. Sec.*, 966 F.3d 1277, 1278–79 (11th Cir. 2020) (citation omitted); *Sampson v. Comm'r of Soc. Sec.*, 694 F. App'x 727, 734 (11th Cir. 2017) (per curiam) (citing *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999)). If the

---

[2] Unless otherwise indicated, citations to the Code of Federal Regulations are to the version in effect at the time of the ALJ's decision.
[3] Unpublished opinions are not considered binding precedent but may be cited as persuasive authority. 11th Cir. R. 36-2.

Commissioner carries that burden, the claimant must then prove she cannot engage in the work identified by the Commissioner. *Goode*, 966 F.3d at 1279. In the end, "'the overall burden of demonstrating the existence of a disability . . . rests with the claimant.'" *Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1359 (11th Cir. 2018) (quoting *Doughty v. Apfel*, 245 F.3d 1274, 1280 (11th Cir. 2001)).

A claimant who does not prevail at the administrative level may seek judicial review in federal court provided the Commissioner has issued a final decision on the matter after a hearing. 42 U.S.C. § 405(g). Judicial review is limited to determining whether the Commissioner applied the correct legal standards and whether the decision is supported by substantial evidence. *Id.*; *Hargress v. Soc. Sec. Admin., Comm'r*, 883 F.3d 1302, 1305 n.2 (11th Cir. 2018) (per curiam) (citation omitted). Substantial evidence is "more than a mere scintilla" and is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Biestek v. Berryhill*, 587 U.S. ___, 139 S. Ct. 1148, 1154 (2019) (internal quotation marks and citations omitted). In evaluating whether substantial evidence supports the Commissioner's decision, the Court "may not decide the facts anew, make credibility determinations, or re-weigh the evidence." *Carter*, 726 F. App'x at 739 (citing *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) (per curiam)). While courts will defer to the Commissioner's factual findings, they afford no such deference to her legal conclusions. *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (citations omitted).

III.

The Plaintiff's sole claim on appeal is that the ALJ erred in his evaluation of evidence generated after the Plaintiff's date last insured (i.e., June 30, 2017), which relates to a back injury she apparently suffered immediately before her insured period ended. Upon careful review of the parties' submissions and the pertinent portions of the record, the Court finds the Plaintiff's claim to be without merit.

A.

As noted above, at step four of the sequential evaluation process, an ALJ must determine the claimant's RFC and her ability to perform her past relevant work. *See* 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1545. To do so, an ALJ "must consider all medical opinions in a claimant's case record, together with other relevant evidence." *McClurkin v. Soc. Sec. Admin.*, 625 F. App'x 960, 962 (11th Cir. 2015) (per curiam) (citing 20 C.F.R. § 404.1527(b)). Medical opinions are statements from physicians and other acceptable medical sources concerning what a claimant may still be able to do despite her impairments; whether the claimant is limited in her ability to perform various work activities; and whether the claimant can see, hear, or use her other senses or "adapt to environmental conditions, such as temperature extremes or fumes." 20 C.F.R. § 404.1513(a)(2).

A claimant applying for DIB has the burden of proving she was disabled on or before the expiration of her date last insured. *Moore*, 405 F.3d at 1211. Of relevance here, this requirement cannot be met by showing the mere existence of an injury during the insured period where such evidence does not also reveal the severity and limiting

5

effects of that injury on a claimant's condition at that time. *See Whitton v. Comm'r, Soc. Sec. Admin.*, 643 F. App'x 842, 847 (11th Cir. 2016) (per curiam) (finding that the ALJ did not err in assigning no weight to a medical opinion, in part, because it was issued after the claimant's date last insured and did not address the extent of the claimant's condition during the relevant period) (citations omitted); *Hughes v. Comm'r of Soc. Sec. Admin*, 486 F. App'x 11, 14 (11th Cir. 2012) (per curiam) (observing that evidence relating to the time frame following the date last insured did "not appear to be based upon [the claimant's] mental and physical conditions within the time period at issue[, and t]hus . . . w[as] not particularly relevant to whether [the claimant] was disabled for purposes of DIB") (citation omitted); *Moore*, 405 F.3d at 1213 n.6 (noting that the "mere existence" of impairments is not probative because it "does not reveal the extent to which they limit [the claimant's] ability to work or undermine the ALJ's determination in that regard.") (citation omitted). The requirement that a claimant show she was disabled during the insured period also cannot be satisfied by post-date last insured evidence which simply reflects the claimant's condition worsened after the insured time frame. *Demandre v. Califano*, 591 F.2d 1088, 1090–91 (5th Cir. 1979) (per curiam) (finding that medical evidence supported the ALJ's decision to deny a claim because the claimant's condition deteriorated after the claimant's date last insured and, by the end the relevant period, the physician thought the claimant's condition would improve within two months).[4]

---

[4] The Eleventh Circuit, in its *en banc* decision in *Bonner v. City of Pritchard*, 661 F.2d 1206 (11th Cir. 1981), adopted as precedent the decisions of the former Fifth Circuit rendered prior to October 1, 1981.

In this case, the ALJ found at step four that the Plaintiff had the RFC to perform a range of sedentary work through her date last insured. (R. 24); *see also* 20 C.F.R. § 404.1567(a) (defining sedentary work); Soc. Sec. Ruling 83-10, 1983 WL 31251, at *5 (Jan. 1, 1983) (same). In particular, the ALJ determined that the Plaintiff could lift up to ten pounds occasionally; could stand and/or walk two hours in an eight-hour workday; could sit six hours in an eight-hour workday; could not climb ladders, ropes, or scaffolds; could occasionally climb ramps/stairs, balance, stoop, crouch, kneel, or crawl; and must avoid concentrated exposure to extreme cold and heat and even moderate exposure to hazards. (R. 24).

In rendering these RFC findings, the ALJ declined to give "probative value" to evidence post-dating the Plaintiff's date last insured, which concerned a fracture of one of her lumbar spine vertebrae[5] likely sustained when she fell during a seizure on June 12, 2017, eighteen days prior to her date last insured. (R. 27). Because the consequences of this fracture are the focus of the Plaintiff's challenge here, some discussion of the treatment she received for this injury is warranted.

According to the evidence in the record, the Plaintiff was taken to the emergency room (ER) following her fall, where she complained of some generalized

---

[5] Broadly speaking, the human spine consists of four parts: the cervical spine (i.e., the neck); the thoracic spine (i.e., the upper and/or middle back); the lumbar spine (i.e., the lower back); and the sacral spine (i.e., the lowest part of the spine, which is just above the coccyx). *See generally* Houston D. Smith, *Georgia Soft Tissue Injuries* § 3-8 (Supp. Apr. 2021). The location of the vertebrae in the cervical, thoracic, lumbar, and sacral spine are referred to as C1, 2, 3, etc.; T1, 2, 3, etc.; L1, L2, L3, etc.; and S1, 2, 3, etc., respectively. *See* 4 Roscoe N. Gray, M.D. & Louise J. Gordy, M.D., L.L.N., *Attorney's Textbook of Medicine* § 13A.02 (3d ed. 2021).

lower lumbar back pain. (R. 389). After undergoing various tests, she was diagnosed with a seizure and back spasms. (R. 392). She was also told that a lumbar spine x-ray could rule out a fracture but that such a fracture was "extremely unlikely" since she was not feeling any "midline vertebral tenderness" and reported "no specific injury." *Id.* As a result, the Plaintiff declined to have any x-rays taken of her lumbar spine during that ER visit. *Id.*

The Plaintiff was thereafter authorized for in-home physical therapy from late June 2017 to late August 2017 but was discharged early at the beginning of July 2017 because she had "achieved optimal rehab potential." (R. 903, 930). The Plaintiff claimed her back pain continued, however, and an x-ray was taken of her spine in July 2017. (R. 511). That x-ray showed a compression fracture of the L1 vertebrae with "increased sclerosis[6] an[d] approximately 50% loss of height [in] the mid and anterior portion[s] of the vertebral body." *Id.* The fracture seemed to be remote, however, and no acute compression fractures were observed. *Id.*

The Plaintiff's back condition apparently continued to deteriorate over the next month. An MRI of the Plaintiff's lumbar spine in September 2017 confirmed a subacute L1 fracture and revealed resulting severe spinal stenosis,[7] according to her

---

[6] "Sclerosis, or hardening, is a pathological condition in which a tissue has become hard and which is produced by overgrowth of fibrous tissue and other changes (as in arteriosclerosis) or by increase in interstitial tissue and other changes (as in multiple sclerosis)." *Randolph v. Astrue*, 2012 WL 3206796, at *2 (N.D. Fla. Feb. 28, 2012) (citation omitted), *report and recommendation adopted*, 2012 WL 3206484 (N.D. Fla. Aug. 8, 2012).
[7] Spinal stenosis is a narrowing of the diameter of the spaces within the spine and occurs most often in the lower back and neck. Leo Gelfund & Raoul D. Magana, *Courtroom Medicine Series: The Low Back* § 31A.40 (2016).

8

primary care physician, Dr. Glenn Zaide. (R. 477). Shortly thereafter, also in September 2017, the Plaintiff was admitted to the hospital due to her back issues. (R. 287, 299). During this admission, the Plaintiff's neurosurgeon, Dr. Michael Campanelli, noted that the Plaintiff "got bet[t]er then worse" after the June 2017 fall (R. 287) and an ER physician, Dr. Dhruv Panchal, reported that the Plaintiff was "complaining of worsening symptoms" associated with a spinal fracture (R. 299).

One month later, in October 2017, Dr. Zaide completed a Physical Capacity Questionnaire, in which he found that the Plaintiff could not stand/walk up to two hours of an eight-hour workday; could not sit for more than six hours of an eight-hour workday; could not lift/carry up to ten pounds occasionally; and could not lift/carry up to a few pounds frequently. (R. 742). Dr. Zaide did not indicate, however, whether the Plaintiff required these restrictions prior to October 2017, but he did state that he did not expect the Plaintiff to remain "at this level of severity" for the next twelve months. *Id.*

The Plaintiff continued to receive care for her back pain from Dr. Campanelli and his staff through the remainder of 2017. *See, e.g.*, (R. 1227). Of note here, she told a nurse in November 2017 that the pain she felt on that particular visit was the same as it was on the "first day." (R. 452). Dr. Campanelli ultimately operated on the Plaintiff's spine in December 2018. (R. 860).

In his decision, the ALJ found that the records from after the Plaintiff's date last insured, including the opinions expressed by Dr. Zaide in his October 2017 Physical

9

Capacity Questionnaire, were not relevant to his disability determination, and he therefore did not take them into account. In particular, he stated:

> [I do] not give probative weight to the medical reports dated after the [Plaintiff's date last insured], as these relate to [her] condition after she was last insured/entitled to a period of disability and disability insurance benefits and not during the adjudication period from [her alleged onset date] through the [date last insured].

(R. 27) (internal citations omitted).

The Plaintiff now argues that the ALJ's failure to consider the post-date last insured evidence pertaining to her spinal fracture constituted error warranting reversal and remand. (Doc. 22 at 18–21). In support of this contention, the Plaintiff asserts that this evidence is relevant to the severity of her condition during the insured period because the fracture occurred within that time frame. *Id.* at 20. The Court disagrees.

While it appears uncontested that the Plaintiff sustained the L1 vertebral fracture during her fall in June 2017, the mere fact that the injury occurred approximately three weeks before the end of her insured period is, by itself, insufficient to prove disability. *See Whitton*, 643 F. App'x at 847; *Hughes*, 486 F. App'x at 14; *Moore*, 405 F.3d at 1213 n.6. Notably, outside of highlighting record evidence demonstrating that she sustained the fracture prior to her date last insured, the Plaintiff does not identify documentation or reports from after her insured period that purport to describe the seriousness of her spinal condition during the insured time frame. *See Moore*, 405 F.3d at 1211 (noting that a claimant has the burden of proving she is disabled before her date last insured); *Whitton*, 643 F. App'x at 847; *Demandre*, 591

F.2d at 1090–91. The absence of such evidence is significant given that the gravity of the Plaintiff's back condition appears to have worsened following the expiration of her insured period. *See Whitton*, 643 F. App'x at 847; *Hughes*, 486 F. App'x at 14; *Demandre*, 591 F.2d at 1090–91.

In an attempt to cure this deficiency, the Plaintiff points to the comment she made to Dr. Campanelli's nurse in November 2017 that the pain she was experiencing that day was the same as the "first day." (Doc. 22 at 21). The problem with the Plaintiff's reliance on this comment is that the ALJ did not credit it, and it is not the role of the Court to reweigh that evidence on appeal. *See Carter*, 726 F. App'x at 739 (citation omitted).[8]

The Plaintiff's citation to the court's decision in *Fitzgibbon v. Commissioner of Social Security*, 2016 WL 4087475 (M.D. Fla. Aug. 2, 2016) is likewise unavailing. In *Fitzgibbon*, the claimant argued that the ALJ wrongly disregarded a post-date last insured x-ray that evidenced a "long history of cervical spine problems prior to [the claimant's] insured status expiring." *Id.* at *5 (internal quotation marks and citation

---

[8] The Plaintiff does not assert that the ALJ's decision to discredit this evidence is inadequately supported, and she has therefore waived any such challenge. *See Sanchez v. Comm'r of Soc. Sec.*, 507 F. App'x 855, 856 n.1 (11th Cir. 2013) (per curiam) (citations omitted); *Simpson v. Comm'r of Soc. Sec.*, 423 F. App'x. 882, 885 (11th Cir. 2011) (per curiam) (citing *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999)); *Sumlin v. Saul*, 2020 WL 7232240, at *4 n.6 (M.D. Fla. Nov. 23, 2020) (citing *Simpson*, 423 F. App'x at 885), *report and recommendation adopted*, 2020 WL 7229746 (M.D. Fla. Dec. 8, 2020). Even were that not the case, the Plaintiff's purported remark to the nurse in November 2017 conflicts with her own sworn testimony at the ALJ hearing, where she admitted that her condition worsened *after* being referred to Dr. Campanelli in September 2017. It thus appears that the ALJ's determination not to credit the Plaintiff's alleged November 2017 remark is sufficiently buttressed by the record. *See Foote v. Chater*, 67 F.3d 1553, 1561–62 (11th Cir. 1995) (per curiam) (finding that the ALJ's credibility finding must be supported by substantial evidence.).

11

omitted). In reversing and remanding the ALJ's decision, the court found that the ALJ had failed to address whether this evidence had any bearing on the claimant's spinal condition during the insured period. *Id.* Even assuming *Fitzgibbon* was correctly decided, it is distinguishable. Unlike in that action, the ALJ here went further by making a specific finding that the post-date last insured evidence "relate[d] to the [Plaintiff's] condition after she was last insured." (R. 25–27). And, for the reasons stated above, the Plaintiff fails to show that this determination was improper.

The Court similarly finds unpersuasive the Plaintiff's efforts to draw support for her argument from the functional limitations imposed by Dr. Zaide in his October 2017 Physical Capacity Questionnaire. (Doc. 22 at 26–29). As noted, that questionnaire was completed after the Plaintiff's date last insured, and does not indicate that the restrictions Dr. Zaide proposed therein relate to the severity of the Plaintiff's condition during the insured period. The ALJ's determination to discount Dr. Zaide's opinion was therefore not in error. *See Whitton*, 643 F. App'x at 847 (finding that an ALJ did not err is discrediting a medical opinion rendered after the date last insured); *Washington*, 906 F.3d at 1359 (observing that a court will not disturb an ALJ's opinion that is supported by substantial evidence).

The Plaintiff's related contention that the ALJ should have afforded Dr. Zaide's opinions "controlling weight" because Dr. Zaide was the Plaintiff's treating physician fails. As an initial matter, this contention ignores the threshold problem referenced above that Dr. Zaide's opinions were rendered after the Plaintiff's date last insured, and that there is no evidence demonstrating they pertain to the relevant time frame.

Irrespective of this issue, the Regulations upon which the Plaintiff exclusively relies in making this argument have been superseded and do not govern in this case. (Doc. 22 at 26–29); (R. 742). More importantly, these new Regulations eliminated the "treating source rule" altogether. *Yanes v. Comm'r, Soc. Sec. Admin.*, ___ F. App'x ___, 2021 WL 2982084, at *5 n.9 (11th Cir. July 15, 2021). The Plaintiff does not ground her contention in the new Regulations and even concedes that the treating source rule was eliminated. (Doc. 22 at 27). Nor does she maintain that the new Regulations exceed the Commissioner's authority or are arbitrary and capricious. *Satellite Broad. & Commc'ns Ass'n of Am. v. Oman*, 17 F.3d 344, 348 n.8 (11th Cir. 1994) ("'[N]ew regulations at variance with prior judicial precedents are upheld unless they exceed the Secretary's authority or are arbitrary and capricious.'") (citing *Schisler v. Sullivan*, 3 F.3d 563, 568 (2d Cir. 1993)) (cleaned up). As a result, she has waived any argument based on the new standard. *See Sanchez*, 507 F. App'x at 856 n.1; *Simpson*, 423 F. App'x. at 885; *Sumlin*, 2020 WL 7232240, at *4 n.6.

Finally, to the extent the Plaintiff alleges the ALJ's decision to disregard the post-insured period evidence is not sufficiently supported by the record, the Court disagrees. By way of example, upon her discharge from the hospital following her seizure-induced fall in June 2017, the Plaintiff was diagnosed with back spasms with "no midline vertebral tenderness," and she herself refused an x-ray to rule out a fracture. (R. 392). She then appeared to improve after the end of her insured period based on the early termination of her in-home physical therapy program in July 2017. (R. 392, 903, 930). And, as the ALJ noted, it was only after that juncture that the

13

Plaintiff's condition worsened, causing her to be hospitalized again in September 2017 (R. 26, 287, 299) and, eventually, to require surgery in December 2018 (R. 860). The items in the record upon which the ALJ relied constituted substantial evidence to buttress his determination, and the Plaintiff fails to meaningfully argue otherwise. *See Hargress*, 883 F.3d at 1305 n.2 (citations omitted).

Even assuming that the ALJ did err, any such error would be harmless. An ALJ's error "will be considered harmless if it is clear that the error did not affect the ALJ's ultimate determination." *Jacobus v. Comm'r of Soc. Sec.*, 664 F. App'x 774, 776 (11th Cir. 2016) (per curiam) (citing *Diorio v. Heckler*, 721 F.2d 726, 728 (11th Cir. 1983)). None of the record evidence cited by the Plaintiff here—namely, Dr. Zaide's October 2017 opinion, her purported November 2017 comment to the nurse, and her December 2018 surgery (Doc. 22 at 21; R. 452, 567)—demonstrate that she was disabled before her date last insured. As discussed above, the Plaintiff does not show that Dr. Zaide's assessments related to her condition during the insured period. (R. 742); *see Whitton*, 643 F. App'x at 847. As for the Plaintiff's November 2017 comment, the ALJ did not credit that evidence and it is therefore not probative of her condition. And the Plaintiff has not demonstrated that the surgery she had a year and a half after her fracture relates to her condition at or near the time of the injury. Thus, the Plaintiff fails to satisfy her burden of proving she was disabled during the insured period. *Hughes*, 486 F. App'x at 13 (noting that once a claimant's insured status is lost, a claim will be denied even if the claimant becomes disabled after her date last insured).

IV.

For the foregoing reasons, it is hereby ORDERED:

1. The Commissioner's decision is affirmed.

2. The Clerk of Court is directed to enter Judgment in the Defendant's favor and to close the case.

SO ORDERED in Tampa, Florida this 30th day of September 2021.

*Christopher P. Tuite* (signature)
HONORABLE CHRISTOPHER P. TUITE
United States Magistrate Judge

Copies to:
Counsel of record